## PEOPLE *v.* WALTON

1. CRIMINAL LAW—SENTENCE—INDETERMINATE SENTENCE—MINIMUM —MAXIMUM.

   The indeterminate sentence statute requires a court to set a minimum term and then to state a maximum term as set by statute (CL 1948, § 769.8).

2. CRIMINAL LAW—BREAKING AND ENTERING—STATUTORY SENTENCE —CORRECTION OF SENTENCE—ABSENCE OF DEFENDANTS.

   A maximum sentence of 10 years is prescribed by statute for breaking and entering a business place; hence it was not error to correct sentences of 7 to 15 years for that offense to 7 to 10 years even though the defendants and their counsel were absent at the time of correction (MCLA § 750.110).

3. CRIMINAL LAW—CORRECTION OF SENTENCE—ABSENCE OF DEFENDANTS.

   Trial court correction, in the absence of defendants and of their counsel, of the portions of sentences for breaking and entering a business place which were in excess of the statutory maximum was proper, since the statement of the maximum terms in the sentences and the commitments by the trial court was a ministerial act and was legally correct by an order *nunc pro tunc* (MCLA § 750.110).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 540.
  Validity, under indeterminate sentence law, of sentence fixing identical minimum and maximum terms of imprisonment. 29 ALR2d 1344.
[2, 3] 21 Am Jur 2d, Criminal Law § 307.
  Absence of counsel for accused at time of sentence as requiring vacation thereof or other relief. 20 ALR2d 1240.
[3] 21 Am Jur 2d, Criminal Law § 574.
[4] 21 Am Jur 2d, Criminal Law § 536.
[5–7] 5 Am Jur 2d, Appeal and Error §§ 549, 737.
[7] 5 Am Jur 2d, Appeal and Error § 896.

4. CRIMINAL LAW—SENTENCE—CORRECT MAXIMUM.

  Sentences of 7 to 15 years for breaking and entering a building were valid sentences under the indeterminate sentence statute even though the trial court erroneously stated the maximum terms because the correct maximum, which was 10 years, is read into every sentence by force of law (CL 1948, § 769.24; MCLA § 750.110).

5. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—OBJECTION—APPEAL AND ERROR.

  A trial judge should not admit evidence that is palpably inadmissible and irretrievably prejudicial to a defendant even though no objection is made, and if an appellate court observes the presence of such evidence, it may not let an unfair trial stand because no objection was made.

6. CRIMINAL LAW—EVIDENCE—IMPROPER ADMISSION—APPEAL AND ERROR—FAILURE TO OBJECT.

  A reviewing court will find reversible error in the admission of evidence not properly objected to at the trial only where the evidence is so erroneous as to reduce the trial to a sham or to result in an incurable and fatal prejudice to defendant.

7. CRIMINAL LAW—EVIDENCE—THREATS AGAINST WITNESS.

  Prosecuting attorney's introduction of testimony, in nonjury trial for breaking and entering a business place, regarding threats against a people's witness when no evidence existed to connect defendants to such threats *held*, error, but not reversible error where the trial judge did not consider the objectionable testimony in determining guilt or innocence and where it does not affirmatively appear that the error resulted in a miscarriage of justice (MCLA § 750.110).

Appeal from Recorder's Court of Detroit, Robert A. DeMascio, J. Submitted Division 1 June 4, 1969, at Detroit. (Docket No. 6,015.) Decided June 24, 1969. Leave to appeal denied March 24, 1970. See 383 Mich 772.

Willis Walton and Charlie White were convicted of breaking and entering a business place with intent to commit a larceny therein. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Patricia J. Pernick,* Assistant Prosecuting Attorney, for the people.

*Carl Levin* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendants on appeal.

BEFORE: Holbrook, P. J., and McGregor and Bronson, JJ.

Per Curiam.    Defendants, Willis Walton and Charlie White were convicted before the recorder's court for the city of Detroit sitting without a jury of the crime of breaking and entering a business place with intent to commit a larceny therein. MCLA § 750.110 (Stat Ann 1968 Cum Supp § 28.305).

The record discloses that a building had been broken into and that defendants were apprehended while fleeing that building.  An eyewitness testified that defendants were the men he saw handing materials from out of the building.  Defendants were found guilty by the court and were sentenced January 3, 1968, to prison terms of from 7 to 15 years. On January 16, the trial judge realized that the correct maximum term for the crime was 10 years instead of 15 years as he stated when sentencing the defendants the same day.  He amended the sentences and commitments *nunc pro tunc* to provide maximum terms of 10 years.  Defendants made a motion for a new trial.  This motion was denied and defendants appealed.  Three issues are presented which we restate and discuss in order.

1. *Did the trial court's correction by order* nunc pro tunc *of those portions of the sentences which were in excess of the statutory maximum in the absence of*

*the defendants and their counsel constitute reversible error?*

This issue is governed by the indeterminate sentence statute, CL 1948, § 769.8 (Stat Ann 1954 Rev § 28.1080):

"When any person shall hereafter be convicted for the first time of crime committed after this act takes effect, the punishment for which prescribed by law may be imprisonment in the State prison at Jackson, the Michigan reformatory at Ionia, the State house of correction and branch of the State prison in the upper peninsula, the Detroit house of correction, or any other prison, the court imposing sentence shall not fix a definite term of imprisonment, but shall fix a minimum term except as hereinafter provided. The maximum penalty provided by law shall be the maximum sentence in all cases except as herein provided and shall be stated by the judge in passing sentence. He shall before or at the time of passing such sentence ascertain by examination of such convict on oath, or otherwise, and by such other evidence as can be obtained tending to indicate briefly the causes of the criminal character or conduct of such convict, which facts and such other facts as shall appear to be pertinent in the case, he shall cause to be entered upon the minutes of the court."

The statute governing an excessive sentence is CL 1948, § 769.24 (Stat Ann 1954 Rev § 28.1094), which reads as follows:

"Whenever, in any criminal case, the defendant shall be adjudged guilty and a punishment by fine or imprisonment shall be imposed in excess of that allowed by law, the judgment shall not for that reason alone be judged altogether void, nor be wholly reversed and annulled by any court of review, but the same shall be valid and effectual to the extent of the lawful penalty, and shall only be reversed or

annulled on writ of error or otherwise, in respect to the unlawful excess."

The indeterminate sentence statute requires the court to *set* a minimum term and then to *state* the maximum as set by statute. In the present case the minimum was properly *set* by the court. The only defect present in the sentences and commitments was the failure of the court to properly *state* the maximum term of 10 years set by statute. The statement of the maximum term in the sentences and the commitments was a ministerial act and was legally corrected by the order *nunc pro tunc.** Under the facts in this case, we cannot understand how any of defendants' constitutional rights are violated. The case of *People* v. *Theodorou* (1968), 10 Mich App 409, cited by defendants is not applicable because there the original sentence was *invalid* under CLS 1961, § 769.9 (Stat Ann 1968 Cum Supp § 28.1081). In the present case the sentences were valid sentences under the indeterminate sentence statute even though the trial court erroneously *stated* the maximum term because the correct maximum is read into every sentence by force of law.

2. *Did the trial court commit reversible error by not offering defendants or their counsel access to the presentence reports or in the alternative to summarize at the time of sentence the contents of the reports?*

This issue was withdrawn by counsel for defendants with the permission of the appellee and the Court at the hearing on oral argument.

3. *Was the prosecuting attorney's introduction of testimony regarding threats against the State's witness when there existed no evidence to connect de-*

---

* *In re Pardee* (1950), 327 Mich 13, 17; *In re Allison* (1948), 322 Mich 491, 494; *In re Richards* (1907), 150 Mich 421, 426.

*fendants to such threats so prejudicial to defendants
that it constitutes reversible error?*

The following is the testimony referred to above:

"*Q.* Since this time has anyone contacted you in
regard to this case?

"*A.* One night I got a telephone call that I would
have my head blown off before this come up to court.

"*Q.* Someone told you that by telephone?

"*A.* By telephone.

"*Q.* I just thought his Honor may want to hear
that. No further questions."

The admission of this testimony was error. 22A
CJS, Criminal Law, § 633, pp 486, 487.

The trial judge stated in his ruling on the motion
for new trial that had there been a jury the admission of this testimony would have been reversible
error:

"The motions [*sic*] are based principally upon
certain colloquy between the people's principal witness and the prosecuting attorney. The colloquy
would be considered prejudicial if it occurred in
the presence of the jury. But in view of the fact
that this was a trial to the court, this court is confident that the colloquy meant nothing and went
unnoticed."

In *People* v. *Davison* (1968), 12 Mich App 429, this
Court considered the effect of the admission of testimony without objection during a non-jury trial,
in the context of reversibility on appeal. The Court
stated as follows (p 432):

"If evidence be offered that is palpably inadmissible and irretrievably prejudicial to a defendant a
trial judge should not let it in, even though no objection be made. On review we have a similar duty,
in that if we observe the presence of such evidence
in the record we may not let an unfair trial stand
because no objection was made. Ordinarily, only

in those cases where the evidence is so erroneous as to reduce the trial to a sham (see *People* v. *Ibarra* [1963], 60 Cal 2d 460 [34 Cal Rptr 863; 386 P2d 487]), or to result in incurable and fatal prejudice to defendant (see *People* v. *Holmes* [1940], 292 Mich 212) will a reviewing Court find reversible error in the admission of evidence not properly objected to at the time of trial."

In the instant case there was ample legal evidence upon which the trier of the facts could determine the defendants' guilt. In *People* v. *Winegar* (1968), 380 Mich 719, 733, Mr. Justice BRENNAN stated:

"In this case, the court concluded, and stated on the record that he found the plea to be freely, understandingly and voluntarily made. This meets the test of a constitutionally valid plea. The court could not have concluded that the plea was understandingly made without satisfying himself that the defendant understood the nature of the accusation and the consequence of his plea. We will not presume judicial incompetence or negligence."

In view of the statement of the trial judge concerning this improper testimony, we are constrained to rule that the trial judge did not consider the objectionable testimony in determining guilt or innocence. For these reasons, we determine that after an examination of the entire cause it does not affirmatively appear that the error complained of has resulted in a miscarriage of justice. CL 1948, § 769.26 (Stat Ann 1954 Rev § 28.1096).

Affirmed.