*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RUSSELL W. ADAMS,

        Defendant-Appellant,

and

STATE APPELLATE DEFENDER OFFICE,

        Intervening Appellee.

UNPUBLISHED
March 25, 2025
1:12 PM

No. 369789
Eaton Circuit Court
LC No. 14-020417-FH

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

In 2015, Defendant pleaded guilty to one count of second-degree home invasion, MCL 750.110a(3), and one count of receiving and concealing stolen property valued at $1,000 or more but less than $20,000, MCL 750.535(3)(a). The trial court sentenced him pursuant to his sentencing agreement to concurrent terms of 120 to 480 months' imprisonment. Defendant now appeals his sentences, by leave granted,[1] as well as other actions taken by the trial court below. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose when the victim reported to police that someone had broken into his house and stolen several items. After identifying defendant as a suspect, Eaton County Sheriff's

---

[1] *People v Adams*, unpublished order of the Court of Appeals, issued May 20, 2024 (Docket No. 369789).

Department deputies searched defendant's home and found some of the stolen items. Defendant was arrested and charged with the above crimes.

Defendant pleaded guilty in accordance with a sentencing agreement with the prosecution for defendant to serve a term of 120 to 480 months' imprisonment as a fourth-offense habitual offender. At sentencing, defense counsel stated he was satisfied with the presentence investigation report (PSIR), and defendant informed the trial court he did not think anything was missing from the PSIR and affirmed the trial court could rely on the PSIR's accuracy. However, trial counsel did mention there was "some question" as to the criminal history listed in defendant's PSIR. The PSIR reflected 136 items under defendant's adult criminal history, many of which had one or more entries indicating "unknown." Most of these "unknown" cases were from Massachusetts, and the probation officer who prepared the PSIR reported he had difficulty understanding how defendant's criminal history was represented in Massachusetts. The trial court opined the officer "went to great lengths to confirm the accuracy of the record." It noted that defendant had a juvenile record, 35 prior misdemeanors, and 36 prior felonies, notwithstanding the "unknown" references. Defense counsel and the prosecution requested the trial court sentence defendant in accordance with his sentencing agreement, which the trial court did. The trial court explained it felt the sentence was "proportionate even if half the reported criminal convictions turned out not to be accurately noted." The trial court also ordered defendant to pay $11,211.05 in restitution, among other costs. After it imposed the restitution amount, the trial court asked whether defendant or defense counsel had any questions. They responded they did not.

Later that year, defendant's first appellate counsel filed a postjudgment motion to reduce the order of restitution or for an evidentiary hearing, to correct the PSIR, and for a *Lockridge*[2] hearing. At the hearing on this motion, counsel argued the PSIR could be interpreted in a way that suggested defendant had many more prior convictions than he actually did and questioned its accuracy. The trial court responded that it did not consider the "unknown" references for purposes of sentencing, stating: "It's just, despite that, he's still, according to the face [sic] sheet, at 36 known felonies and 35 misdemeanors, plus a juvenile record." Nevertheless, the trial court indicated it would not rule on the issue of correcting the PSIR at that time. Defense counsel also argued there was a "large discrepancy" between the values identified for the stolen items by the insurance company and the restitution amount ordered by the trial court. Defense counsel contended defendant was entitled to a restitution hearing to determine the appropriate amount. The trial court orally granted defendant's motion for a restitution hearing out of "fairness" to defendant and directed defense counsel to submit an order. Defense counsel agreed, but failed to do so, and no written order memorializing the trial court's oral order was ever entered.

Nearly eight years later, defendant, through new appellate counsel, renewed his motion for a restitution hearing and *Lockridge* hearing. At the resulting hearing on the motion before a successor judge, defense counsel argued that if the trial court denied the motion for a *Lockridge* hearing, it should review defendant's sentence for proportionality under *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023) (opinion by BOLDEN, J.). At a minimum, counsel argued, defendant was entitled to the restitution hearing that the previous trial court judge had orally granted but was

---

[2] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

never held. The trial court found the prior judge had ruled on the *Lockridge* and evidentiary hearing issues and that he had ordered a restitution hearing. But it nonetheless denied defendant's request for the hearing, instead opting to hold the State Appellate Defender Office (SADO) in contempt for defendant's prior appellate counsel's abandonment of his case, and ordering it to pay $6,445 to the victim, with the remaining $4,766.05 to be paid by defendant. However, apparently following an in-chambers conference, the trial court rescinded its contempt order. The trial court denied defendant's motion for reconsideration, and defendant now appeals.

## II. RESTITUTION

Defendant first argues the trial court violated his due-process rights by ordering him to pay $11,211.05 in restitution and denying his request for a restitution hearing. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

To preserve a challenge to a trial court's restitution order, a defendant must object to it at sentencing. *People v Newton*, 257 Mich App 61, 68; 665 NW2d 504 (2003). Defendant failed to object to the amount of restitution the trial court ordered or request a restitution hearing at sentencing. Therefore, these issues are unpreserved. *Id*.

Ordinarily, "[t]his Court reviews for an abuse of discretion the trial court's calculation of a restitution amount, while reviewing the trial court's factual findings for clear error." *People v Bentley*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364303); slip op at 3. However, because it is unpreserved, we review this issue for plain error affecting defendant's substantial rights. *Newton*, 257 Mich App at 68. "Under the plain-error rule, defendant bears the burden to prove (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022) (quotation marks and citation omitted). "If defendant satisfies those three requirements, we must make a fourth determination: whether the plain error seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id*. at 280.

### B. ANALYSIS

Under the Michigan Constitution, crime victims are entitled to restitution. Const 1963, art 1, § 24. For crimes involving "damage to or loss or destruction of property of a victim[,]" a trial court may order restitution by (a) ordering the defendant to return the property, or (b) if the property cannot be returned, ordering the defendant to pay the property's fair market value. MCL 769.1a(3)(a) and (b). A trial court's calculation of restitution must be reasonable, but need not be mathematically precise. *Bentley*, ___ Mich App at ___; slip op at 5. Where there is a "dispute regarding the proper amount of restitution to be ordered, the prosecuting attorney must prove by a preponderance of the evidence the amount required to make the victim whole." *People v Bryant*, 319 Mich App 207, 212; 900 NW2d 360 (2017); MCL 780.767(4). "The PSIR may be used in making this showing." *Bryant*, 319 Mich App at 212; MCL 780.767(2).

A trial court is only required to make "express findings regarding the amount of restitution[]" when a defendant disputes the amount. *People v Grant*, 455 Mich 221, 235; 565

NW2d 389 (1997). Where a defendant "agree[s] to make restitution and [does] not contest the amount of loss," there is no "dispute" that requires such express findings. *Id*. Furthermore, trial courts are not statutorily required to conduct separate restitution hearings. *Id*. "A judge is entitled to rely on the information in the presentence report, which is presumed to be accurate unless the defendant effectively challenges the accuracy of the factual information." *Id*. at 233-234 (citation omitted).

At sentencing, defendant did not "effectively challenge the accuracy of the factual information[]" in his PSIR pertaining to the victim's loss or the amount of restitution to be paid. *Id*. Therefore, there was no "dispute" which required the trial court to make express findings supporting the amount. *Id*. at 235. Because "defendant did not present any information contrary to the amount of restitution imposed or offer support for any other figure[,]" *id*. at 234, the trial court was entitled to rely on the presumptively accurate PSIR, *id*. at 233-234, which calculated the victim's loss at $11, 211.05.[3]

## III. CONTEMPT ORDER RESCISSION

Defendant next argues the trial court erred by rescinding the contempt order, and asserts that, to the extent there were any procedural due-process issues, the trial court should have held a contempt hearing. We disagree.

## A. STANDARD OF REVIEW

"The issuance of an order of contempt rests in the sound discretion of the trial court and is reviewed only for an abuse of discretion." *In re Contempt of Henry*, 282 Mich App 656, 671; 765 NW2d 44 (2009).[4] "A trial court's decision to hold an evidentiary hearing is [also] reviewed for an abuse of discretion." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). "The nature of the contempt order and whether the contempt statute permitted the sanctions imposed are questions of law that are reviewed de novo." *In re SB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (367014); slip op at 6 (quotation marks and citation omitted).

---

[3] Furthermore, defendant's postjudgment motions were not based on any new or updated information regarding the loss for which restitution was ordered as is required to warrant amending the restitution order. See MCL 780.766(22); MCR 6.430(A).

[4] Because the trial court's rescission seems to be based on an in-chambers conference with the parties, we have no record of whether defendant properly objected to the rescission. We therefore do not know whether defendant properly preserved this issue. But as we discuss below, because defendant "has not demonstrated an error[,]" we "need not consider the applicable standard of review or apply plain-error review to establish whether [he] is entitled to relief[.]" See *People v McKewen*, ___ Mich ___, ___ n 25; ___ NW3d ___ (Docket No. 158869); slip op at 8 n 25. Regardless, for clarity, we will treat this issue as preserved.

## B. ANALYSIS

"Contempt of court is a wilful [sic] act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Murphy*, 345 Mich App 500, 503; 7 NW3d 72 (2023) (quotation marks and citation omitted). Direct contempt occurs "[w]hen any contempt is committed in the immediate view and presence of the court[.]" *Id.*, quoting MCL 600.1711(1). "[D]irect contempt does not require a separate hearing before the court imposes any proper sanctions because all facts necessary to a finding of contempt are within the personal knowledge of the judge." *Murphy*, 345 Mich App at 503 (quotation marks and citation omitted). "In sum, direct contempt can be resolved with a summary proceeding." *Id.*; MCL 1711(1). Indirect contempt, on the other hand, "occurs outside the court's direct view[.]" *Murphy*, 345 Mich App at 503 (quotation marks and citation omitted). In cases of indirect contempt, "the court must hold a hearing to determine whether the alleged contemnor actually committed contempt[]" and may only impose punishment "after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." *Murphy*, 345 Mich App at 503-504 (quotation marks and citations omitted); MCL 600.1711(2).

Defendant mischaracterizes the contempt at issue in this case as direct contempt. Defendant's former appellate counsel's failure to file the order and ensure the hearing was held did not occur "in the immediate view and presence of the court[.]" *Murphy*, 345 Mich App at 503, quoting MCL 600.1711(1). Former counsel's failures occurred "outside the court's direct view[.]" *Murphy*, 345 Mich App at 503 (quotation marks and citation omitted). Thus, the trial court was required to hold an evidentiary hearing to determine whether former appellate counsel or SADO actually committed contempt. *Id.* at 503-504; MCL 600.1711(2). "The purpose of a nonsummary proceeding is different than a summary one because immediate correction and punishment are not required, and therefore more traditional due-process protections can be observed, including the notice of charges, the assistance of counsel, and a public hearing." *Murphy*, 345 Mich App at 510.

"Contempt proceedings for contempts committed outside the immediate view and presence of the [judge] must be initiated through an ex parte motion supported by an affidavit of facts showing the alleged contemptuous conduct." *In re Contempt of Robertson*, 209 Mich App 433, 438-439; 531 NW2d 763 (1995); MCR 3.606(A); see also *In re Contempt of McRipley*, 204 Mich App 298, 301; 514 NW2d 219 (1994) ("[P]roceedings for contempt committed outside the presence of the court must be initiated pursuant to the procedure set forth in MCR 3.606."). There is no dispute these procedures were not followed in this case. The trial court's decision to hold SADO in indirect contempt was therefore erroneous. "After giving the parties an opportunity to be heard, and provided it has not yet entered judgment in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous." MCR 6.435(B). The trial court was well within its authority to rescind its erroneous order.

In support of his argument that the trial court should have held a hearing instead of rescinding the order, defendant summarily asserts: "Because the trial court's finding of contempt was proper, it was error for the court to rescind its order without at least a hearing. The court refused to do so and this constituted legal error." Defendant has identified no legal authority to support this argument. Therefore, defendant has abandoned this argument. See *People v McPherson*, 263 Mich App 124, 136; 687 NW2d 370 (2004) ("The failure to brief the merits of an allegation of error constitutes an abandonment of the issue.").

-5-

IV. REVISION OF THE PSIR

Defendant next argues that the trial court erred by failing to revise his PSIR because it contained inaccurate information. We disagree.

A. STANDARD OF REVIEW

"We review for an abuse of discretion the trial court's decisions regarding the information in a defendant's PSIR." *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019). "A trial court abuses its discretion when it chooses an outcome outside of the range of principled outcomes, or when it makes an error of law." *Bentley*, ___ Mich App at ___; slip op at 3 (citations omitted).

B. ANALYSIS

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Johnson*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362236); slip op at 6 (quotation marks and citation omitted.) "A sentence is invalid if it is based on inaccurate information." *Id*. (quotation marks, brackets, and citation omitted). "The PSIR is used by the trial court at sentencing, but it also follows the defendant to prison." *Lampe*, 327 Mich App at 120 (quotation marks, brackets, and citation omitted); see also MCL 771.14(6). "[C]ritical decisions are made by the Department of Corrections regarding a defendant's status based on the information contained in the [PSIR]." *People v Uphaus (On Remand)*, 278 Mich App 174, 182; 748 NW2d 899 (2008) (quotation marks and citation omitted). "Accordingly, the PSIR should accurately reflect any determination the sentencing judge has made concerning the accuracy or relevancy of the information contained in the report." *Id*. (quotation marks and citation omitted).

"At sentencing, either party may challenge the accuracy or relevancy of any information contained in the [PSIR]." *Lampe*, 327 Mich App at 120 (quotation marks and citation omitted). "The information is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge, but upon assertion of a challenge to the factual accuracy of information, a court has a duty to resolve the challenge." *Id*. (quotation marks and citation omitted). "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *Id*. (quotation marks and citation omitted). Additionally, "[w]hen a sentencing court states that it will disregard information in a presentence report challenged as inaccurate, the defendant is entitled to have the information stricken from the report." *People v Britt*, 202 Mich App 714, 718; 509 NW2d 914 (1993).

Defendant did not challenge the accuracy of the PSIR at sentencing. When asked, defendant confirmed that the trial court could "rely on the accuracy of the report for purposes of sentencing[.]" While defense counsel, shortly thereafter, asserted there was "some question" about the "unknown" references in his adult criminal history, he opined that this was likely due to the different format Massachusetts uses when listing criminal history, and did not argue this "question" further. Even after the trial court gave its reasoning and noted that its decision would be the same even if it did not consider the "unknown" references, both defendant and defense counsel, when asked, had no questions. Waiver is "the intentional relinquishment or abandonment

of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). Defendant, in affirming the accuracy of the PSIR and confirming the trial court could rely on it for sentencing, has waived any challenge concerning any alleged inaccuracies in the PSIR on appeal. See *id*. ("One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error.") (quotation marks and citations omitted); see also, e.g., *People v Sharp*, 192 Mich App 501, 503-504; 481 NW2d 773 (1992) (concluding that the defendant waived his right to challenge the accuracy of the information in the PSIR when he raised the challenge for the first time during a postsentencing hearing after declining to do so at sentencing).

## V. PROPORTIONALITY

Finally, defendant argues his sentence was disproportionate. We disagree.

### A. STANDARD OF REVIEW

"The proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality . . . ." *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 5 (quotation marks, brackets, and citation omitted). "The sentencing court abuses its discretion if the sentence imposed is disproportionate to the seriousness of the circumstances involving the offense and the offender." *Id*.

### B. ANALYSIS

The trial court sentenced defendant in accordance with his sentencing agreement. Further, he cites to no error in the plea process. " '[W]hen a defendant pleads guilty with knowledge of the sentence that will be imposed, the defendant's plea demonstrates that he or she agrees that the sentence is proportionate to the offense and offender.' " *People v Guichelaar*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363588); slip op at 5, quoting *People v Smith*, 319 Mich App 1, 6; 900 NW2d 108 (2017). Defendant has waived appellate review of the proportionality of his sentence.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani